**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
───────────────────────────────

NICOLE L. D.,

                              Plaintiff,

         v.
                                                    No. 5:23-CV-00517
COMMISSIONER OF SOCIAL SECURITY,                    (AMN/CFH)

                              Defendant.
───────────────────────────────

**APPEARANCES:**                          **OF COUNSEL:**

Nicole L. D.
Baldwinsville, New York 13027
Plaintiff pro se

Social Security Administration           VERNON NORWOOD, ESQ.
Office of the General Counsel
6401 Security Boulevard
Baltimore, Maryland 21235
Attorney for defendant

**CHRISTIAN F. HUMMEL**
**U.S. MAGISTRATE JUDGE**

**REPORT-RECOMMENDATION AND ORDER**[1]

        Nicole L. D.[2] ("plaintiff") brings this action pursuant to 42 U.S.C. § 405(g) seeking

review of a decision by the Commissioner of Social Security ("the Commissioner")

denying her application for a period of disability, disability insurance benefits, and

supplemental security income.  See Dkt. No. 1.  Plaintiff has submitted a "statement of

─────────────────

[1] This matter was referred to the undersigned for completion of a Report and Recommendation in accordance with General Order 18 and Local Rule 72.3(d).  See Dkt. No. 4.
[2] In accordance with guidance from the Committee on Court Administration and Case Management of the Judicial Conference of the United States, which was adopted by the Northern District of New York in 2018 to better protect personal and medical information of non-governmental parties, this Report-Recommendation and Order will identify plaintiff's last name by initial only.

objection." Dkt. No. 13. The Commissioner moves for judgment on the pleadings and for the Commissioner's decision to be affirmed. See Dkt. No. 16. Plaintiff filed a reply, stating that she "request[s] the acknowledgement to relief [of her] social security of earnings[.]" Dkt. No. 20. For the following reasons, it is recommended that plaintiff's request be denied, the Commissioner's motion be granted, and the Commissioner's decision be affirmed.

## I. Background

On August 19, 2015, plaintiff filed a Title II application for a period of disability and disability benefits, as well as a Title XVI application for supplemental security income, alleging a disability onset date of March 6, 2012. See T. at 12, 134, 149.[3] The Social Security Administration ("SSA") denied plaintiff's Title XVI application on December 3, 2015, and denied her Title II application on January 15, 2016. See id. at 191-95, 197-201. Plaintiff filed a written request for a hearing, see id. at 206-08, and a hearing was held before Administrative Law Judge ("ALJ") Shawn Bozarth on September 25, 2017. See id. at 447-519. On November 7, 2017, the ALJ issued an unfavorable decision. See id. at 165-76.

Plaintiff filed a request for review by the Appeals Council. See T. at 326-35. On August 13, 2019, the Appeals Council vacated the November 7, 2017, decision, and remanded the case to the ALJ for further proceedings. See id. at 187-90. ALJ Bruce S. Fein held hearings on July 5, 2022, and October 25, 2022. See id. at 34-119. On

---

[3] "T." followed by a number refers to the pages of the administrative transcript filed by the Commissioner. See Dkt. No. 11. Citations to the administrative transcript refer to the pagination in the bottom, right-hand corner of the page.

November 2, 2022, the ALJ issued an unfavorable decision.  See id. at 13-24.  Plaintiff

timely commenced this action on April 27, 2023.  See Dkt. No. 1.

## II. Legal Standards

### A. Standard of Review

In reviewing a final decision of the Commissioner, a district court may not

determine de novo whether an individual is disabled.  See 42 U.S.C. §§ 405(g),

1388(c)(3); see also Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d

Cir. 1990).  Rather, the Commissioner's determination will only be reversed if the

correct legal standards were not applied, or it was not supported by substantial

evidence.  See Johnson v. Bowen, 817 F.2d 983, 985-86 (2d Cir. 1987); see also Berry

v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982).  Substantial evidence is "more than a

mere scintilla," meaning that in the record one can find "such relevant evidence as a

reasonable mind might accept as adequate to support a conclusion."  Halloran v.

Barnhart, 362 F.3d 28, 31 (2d Cir. 2004) (per curiam) (citing Richardson v. Perales, 402

U.S. 389, 401 (1971) (internal citations omitted)).  The substantial evidence standard is

"a very deferential standard of review . . . [This] means once an ALJ finds facts, we can

reject [them] only if a reasonable factfinder would have to conclude otherwise."  Brault v.

Soc. Sec. Admin., Comm'r, 683 F.3d 443, 448 (2d Cir. 2012) (per curiam) (citation,

emphasis, and internal quotations marks omitted).  Where there is reasonable doubt as

to whether the Commissioner applied the proper legal standards, the decision should

not be affirmed even though the ultimate conclusion is arguably supported by

substantial evidence.  See Martone v. Apfel, 70 F. Supp. 2d 145, 148 (N.D.N.Y. 1999)

(citing <u>Johnson</u>, 817 F.2d at 986).  However, if the correct legal standards were applied and the ALJ's finding is supported by substantial evidence, such finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]."  <u>Rosado v. Sullivan</u>, 805 F. Supp. 147, 153 (S.D.N.Y. 1992) (citation omitted).

## B. Determination of Disability

"Every individual who is under a disability shall be entitled to a disability . . . benefit . . . ."  42 U.S.C. § 423(a)(1)(E).  Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months[.]"  <u>Id.</u> § 423(d)(1)(A).  A medically-determinable impairment is an affliction that is so severe that it renders an individual unable to continue with his or her previous work or any other employment that may be available to him or her based upon age, education, and work experience.  <u>See id.</u> § 423(d)(2)(A).  Such an impairment must be supported by "medically acceptable clinical and laboratory diagnostic techniques."  <u>Id.</u> § 423(d)(3).  Additionally, the severity of the impairment is "based on objective medical facts, diagnoses[,] or medical opinions inferable from [the] facts, subjective complaints of pain or disability, and educational background, age, and work experience."  <u>Ventura v. Barnhart</u>, No. 04-CV-9018 (NRB), 2006 WL 399458, at *3 (S.D.N.Y. Feb. 21, 2006) (citing <u>Mongeur v. Heckler</u>, 722 F.2d 1033, 1037 (2d Cir. 1983)).[4]

---

[4] All unpublished opinions cited in this Report-Recommendation and Order, unless otherwise noted, have been provided to plaintiff.

The Second Circuit employs a five-step analysis, based on 20 C.F.R.

§ 404.1520, to determine whether an individual is entitled to disability benefits:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity.
>
> If he [or she] is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his [or her] physical or mental ability to do basic work activities.
>
> If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him [or her] disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity.
>
> Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he [or she] has the residual functional capacity to perform his [or her] past work.
>
> Finally, if the claimant is unable to perform his [or her] past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry, 675 F.2d at 467 (spacing added). "If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further." Barnhart v. Thomas, 540 U.S. 20, 24 (2003). The plaintiff bears the initial burden of proof to establish each of the first four steps. See DeChirico v. Callahan, 134 F.3d 1177, 1180 (2d Cir. 1998) (citing Berry, 675 F.2d at 467). If the inquiry progresses to the fifth step, the burden shifts to the Commissioner to prove that the plaintiff is still able to engage in gainful employment somewhere. See id. (citing Berry, 675 F.2d at 467).

**C. Special Solicitude**

Where, as here, a party seeks judgment against a pro se litigant, a court must afford the non-movant special solicitude.  See Treistman v. Fed. Bureau of Prisons, 470 F.3d 471, 477 (2d Cir. 2006).  As the Second Circuit stated,

> [t]here are many cases in which we have said that a pro se litigant is entitled to special solicitude, that a pro se litigant's submissions must be construed liberally, and that such submissions must be read to raise the strongest arguments that they suggest.  At the same time, our cases have also indicated that we cannot read into pro se submissions claims that are not consistent with the pro se litigant's allegations, or arguments that the submissions themselves do not suggest, that we should not excuse frivolous or vexatious filings by pro se litigants, and that pro se status does not exempt a party from compliance with relevant rules of procedural and substantive law. . . .

Id. (internal quotation marks, citations, and footnote omitted); see Sealed Plaintiff v. Sealed Defendant, 537 F.3d 185, 191 (2d Cir. 2008) ("On occasions too numerous to count, we have reminded district courts that when [a] plaintiff proceeds pro se, . . . a court is obligated to construe his pleadings liberally.") (internal quotation marks and citations omitted); see also Elizabeth H. v. Comm'r of Soc. Sec., No. 3:19-CV-1020 (CFH), 2020 WL 4501495, at *3 n.6 (N.D.N.Y. Aug. 5, 2020) (applying special solicitude to the pro se plaintiff's arguments in her social security appeal); Abbas v. Colvin, No. 6:14-CV-0959 (GTS), 2015 WL 4078234, at *2 n.2 (N.D.N.Y. July 6, 2015) (same).

## III. The ALJ's Decision

Applying the five-step disability sequential evaluation, the ALJ first determined that plaintiff met "the insured status requirements of the Social Security Act through December 31, 2017[,]" and she "has not engaged in substantial gainful activity since March 6, 2012, the alleged onset date."  T. at 15.  At step two, the ALJ found that

plaintiff "ha[d] the following severe impairments: thoracoscapular dyskinesis of the right shoulder status post-surgery, thoracic outlet syndrome, lumbar spine disorder, cervical spine disorder, asthma, and chronic obstructive pulmonary disease." Id. At step three, the ALJ determined that plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. See id. at 17. Before reaching step four, the ALJ concluded that plaintiff retained the residual functional capacity ("RFC") to

> perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except she can engage in all postural limitations on an occasional basis except no crouching, crawling, kneeling, and climbing ladders, ropes, or scaffolds. She can perform occasional bilateral pushing/pulling. [Plaintiff] is frequently able to reach, handle, finger and feel with her right upper extremity. She should avoid even moderate exposure to unprotected heights, hazardous machinery, and operational control of moving machinery; and avoid concentrated exposure to pulmonary irritants such as fumes, odors, gases, dust, and poorly ventilated areas.

Id. at 17-18. At step four, the ALJ determined that, "[f]or purposes of Title II, [plaintiff] is capable of performing past relevant work as a manager, office; sales representative, hotel services; and composite position of order clerk and secretary," and "[f]or purposes of Title XVI, [plaintiff] is capable of performing past relevant work as sales representative, hotel services; and composite position of order clerk and secretary." Id. at 22. Thus, the ALJ concluded that plaintiff "has not been under a disability, as defined in the Social Security Act, from March 6, 2012, through the date of this decision." Id. at 24.

**IV. Discussion**

## A. The Parties' Arguments[5]

Plaintiff asserts:

> I reiterate to all parties involved/all courts that I articulate cause, truth, and fact to a severe physical injury that is "expected" to and/or did "last" 12 months (+plus) or is "expected" to result death[;] therefore, additional requirements of valid application for Social Security in regard to cause, truth, and fact applicable to all I qualify to individual application prior to 62-65 years of age are valid, however, applicable to I reiterate are cause, truth, and fact to which compromised via fraudulent [sic] activity (etc.) are affected [sic] to not reasonable processes depicted burden of any/all applicable law(s), rule(s), code(s) (etc.) are upon I the pro se claimant/plaintiff whom is not afforded individual legal rights via any/all law(s); and upon all correspondence of individual legal right(s) via any/all law(s) I endure further severe results to which are cause, truth, and fact I am not able to submit information, documentation (etc.) referenced as necessity to support that on file and/or to articulate good cause/reason on the contrary.  The exact practice(s) of all parties involved/all courts is to bear reasonable burden to the legal validity of any/all law(s), rule(s), code(s) etc. to which I the claimant/pro se plaintiff am not to bear burden via continuous fraudulant [sic] activity etc.; not limited to.

> In regard to partially conclude this "BRIEF" submitted/filed via I, . . . claimant/pro se plaintiff, I reiterate that I am compliant to all that comprises processes of this civil action/case/application/motion (etc.); not limited to exact to prior related civil action/case/application/motion (etc.); not limited to, at which time and to current I reiterate legal right via any/all law(s) I am a victim of continuous fraudulant [sic] activity (etc., not limited to) to which I endure severe result(s) in regard to loss of life, abuse to my person via all parties involved/all courts (etc.) not limited to that is imperative for I, . . . , the claimant/pro se plaintiff to proceed accordingly to legal right(s) via any/all law to which is cause, truth, and fact I articulate cautiously to acknowledge there is reasonable and probable cause of intent to commit crime via various sources of methods (pre-planned and/or reactive) to achieve results of individual desired results or collective desired results in regard to access, gain, possession (etc., not limited to) any/all

---

[5] The Court's citations to the parties' briefs refer to the pagination generated by CM/ECF, located in the header of each page.

> personal/private (etc., not limited to) information/ documentation (etc., not limited to) of I, . . . , and/or persons of relation (etc., not limited to) to which desired results is favorable to all parties involved/the court (etc., not limited to) in regard to deny, delay, deter (etc., not limited to) any/all legal right(s) to my Social Security, to my personal/private of medical/healthcare, to my personal/private right(s) to employment/self employment, to my legal right(s) to my earnings and any/all applicable to earn/manage/receive financially.

Dkt. No. 13 at 4-7. Plaintiff argues that she "possess[es] to not be forced to endure the effects of criminal intent so as to receive medical health care," and notes that the "dysfunction [sic] and disconnection applicable to continuity of healthcare is severe and is cause to erronuous [sic] medicals or to nil of necessary to document." Dkt. No. 20 at 7. Plaintiff "request[s] the acknowledgement to relief [of her] social security of earnings (not limited to via effects of crime/fraud), [and] relief to the evident of all persons of SSA jurisdiction who are with legal obligation[.]" Id. at 8.

The Commissioner argues that the ALJ's decision is supported by substantial evidence. See Dkt. No. 16 at 3. Specifically, the Commissioner contends that substantial evidence supports (1) the ALJ's RFC determination; (2) the ALJ's evaluation of the medical opinions; and (3) the ALJ's determination that plaintiff retained the RFC to perform her past relevant work. See id. at 10-15.

## B. Analysis

Even liberally construing her submissions, plaintiff's allegations are indecipherable.[6] See generally Dkt. Nos. 13, 20. "Because [p]laintiff has made no

---

[6] To the extent that plaintiff accuses the SSA of fraud and other criminal acts, such allegations are baseless and unrooted in any legal principles. See generally Dkt. No. 13; see, e.g., Reices-Colon v. Astrue, 523 F. App'x 796, 799 (2d Cir. 2013) (summary order) (finding the plaintiff's opposition to the ALJ's decision baseless, where the plaintiff identified no specific wrongdoing or explained how any wrongdoing would have affected her case).

specific legal challenges to the validity of the Commissioner's decision, [the undersigned] will evaluate the decision for compliance with the appropriate legal standards and basis in substantial evidence of record." Whitehurst v. Comm'r of Soc. Sec., No. 6:06-CV-0261 (LEK/DRH), 2008 WL 724164, at *6 (N.D.N.Y. Mar. 17, 2008) (citing Machadio v. Apfel, 276 F.3d 103, 108 (2d Cir. 2002)); see Hubbard v. Comm'r of Soc. Sec., No. 6:14-CV-1401 (GTS/WBC), 2016 WL 551783, at *4 (N.D.N.Y. Jan. 14, 2016) ("[T]he Court has, despite [the pro se p]laintiff's failure to file a brief, examined the record to determine whether the ALJ applied the correct legal standards and reached a decision based on substantial evidence" in light of "the special solicitude that the Second Circuit mandates for pro se litigants"), report and recommendation adopted, 2016 WL 590226 (N.D.N.Y. Feb. 11, 2016).  In doing so, the undersigned "has independently scrutinized the ALJ's second written decision to ensure that it complies with the remand order from the Appeals Council." Sean Quinton T. v. Comm'r of Soc. Sec., No. 1:19-CV-154, 2019 WL 5842791, at *4 (N.D.N.Y. Nov. 7, 2019) (citation omitted).

The Commissioner argues, and the undersigned agrees, that substantial evidence supports the ALJ's disability analysis.  See Dkt. No. 16 at 10-15.  The ALJ properly applied the five-step sequential process, and substantial evidence supports the ALJ's determination at each step.  See T. at 12-24.

### 1. Step One

The ALJ properly determined that plaintiff had not engaged in substantial activity since March 6, 2012, the alleged onset date.  See T. at 15 (citing T. at 561-68); see also McCrae v. Comm'r of Soc. Sec., No. 21-CV-2386 (WFK), 2023 WL 5310759, at *3

(E.D.N.Y. Aug. 17, 2023) (concluding that the ALJ's decision was supported by substantial evidence where the ALJ found, inter alia, that the plaintiff had not engaged in substantial activity since March 1, 2017).  Plaintiff has not contested this finding and, thus, substantial evidence supports the ALJ's step-one determination.  See T. at 561-68; see also Rosa v. Comm'r of Soc. Sec., No. 19-CV-1433 (RPK), 2022 WL 2274720, at *7 (E.D.N.Y. June 23, 2022) ("As plaintiff does not meaningfully dispute, the ALJ properly determined that plaintiff has not engaged in substantial activity since her application date").

## 2. Step Two

The ALJ also properly found that plaintiff suffered from the following severe impairments: "thoracoscapular dyskinesis of the right shoulder status post-surgery, thoracic outlet syndrome, lumbar spine disorder, cervical spine disorder, asthma, and chronic obstructive pulmonary disease."  T. at 15.  The ALJ further determined that,

> [w]hile there is evidence in the record that [plaintiff] has osteopenia of both hips, femoral neck osteoporosis, right leg pain, deviated septum, gastroesophageal reflux disease, status post biliary stent place, alpha 1 antitrypsin deficiency, hyperlipidemia, hypertension, hyperthyroidism, post laparoscopic cholecystectomy, vitamin D deficiency, shin splint, sinus surgery, and pelvic floor dysfunction, these conditions cause only slight abnormalities which would have no more than a minimal effect on [plaintiff's] ability to perform work.

Id. at 16 (citing T. at 860, 915, 951, 955, 966, 992, 1016-19, 1028, 1143, 1149-50).  The ALJ then summarized plaintiff's medical records to support his conclusion.  See id.  For example, the ALJ noted that "[d]espite her reports of cold, tingly, and numbness in her feet and extremities, [plaintiff] had no sensory deficits noted during the recent

consultative evaluation and diagnostic images of her right foot from November 2021 showed only mild abnormalities." Id. (citing T. at 1142, 1147).

As for plaintiff's mental status, the ALJ found that "[b]ased on the consultative psychiatric report of Jeanne Shapiro, Ph.D., [plaintiff] does not have a medically determinable psychiatric impairment." T. at 16 (citing T. at 1131-38). In reaching this determination, the ALJ gave "significant weight to Dr. Shapiro's report and opinion, because it is consistent with [plaintiff's] report that she is not actively involved in any formal counseling or treatment, and the benign mental status examinations in the record." Id. at 16-17 (citing T. at 778, 822, 830, 853, 885, 889, 893, 924, 938, 1088, 1132-33). The ALJ further noted that "[e]mergency room records also indicated that [plaintiff] did not require psychiatric involvement of any kind, and she has routinely denied experiencing any psychological symptoms." Id. at 17 (citing T. at 854, 1092, 1097, 1101, 1109); see Ashley E. v. Comm'r of Soc. Sec., No. 6:22-CV-299 (GTS/CFH), 2023 WL 6217792, at *15 (N.D.N.Y. Aug. 21, 2023) ("The ALJ also properly relied on opinions which indicated that plaintiff had no work-related mental limitations. . . . Thus, the ALJ's severity determination related to [the] plaintiff's mental health is supported by substantial evidence."), report and recommendation adopted, 2023 WL 6215829 (N.D.N.Y. Sept. 25, 2023).

"Accordingly, the ALJ's analysis at step two provides sufficient explanation indicating that he adequately considered the evidence related to [p]laintiff's alleged impairments, including those he did not find to be severe." Andrea K. v. Comm'r of Soc. Sec., No. 1:18-CV-1448 (CFH), 2021 WL 1224049, at *6 (N.D.N.Y. Mar. 31, 2021) (citations omitted). "Therefore, the ALJ had substantial evidence to support his

conclusions at step two." Id.; see, e.g., Rosa, 2022 WL 2274720, at *7 ("As plaintiff

does not meaningfully dispute, the ALJ properly determined that plaintiff . . . had several

severe and non-severe impairments"); Bundy v. Astrue, No. 09-CV-702 (AF), 2010 WL

4703598, at *7-8 (W.D.N.Y. Sept. 8, 2010) (upholding the ALJ's findings that the plaintiff

had severe and non-severe impairments, where the plaintiff did not contest these

findings), report and recommendation adopted, 2010 WL 4703583 (W.D.N.Y. Nov. 19,

2010).

### 3. Step Three

The ALJ properly concluded that none of plaintiff's impairments met or medically

equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P,

Appendix 1. See T. at 17. As the ALJ noted,

> the record does not show consistent findings of motor,
> sensory, and reflex loss. [T. at 1017-1019, 1141-42].
> Although [plaintiff] has slightly decreased range of motion of
> the shoulders, she had intact hand and finger dexterity, and
> 5/5 grip strength bilaterally. [T. at 1018-1019, 1142]. The
> record does not contain any pulmonary function tests at listing
> level criteria. [T. at 895-97]. Although a spirometry report
> from December 2019 contained low FEV1 values, the medical
> provider noted that [plaintiff] was "unable to produce good and
> reproducible efforts due to severe abdominal and sinus pain."
> [T. at 1095].

Id. Plaintiff has not contested these findings. See, e.g., Rockwood v. Astrue, 614 F.

Supp. 2d 252, 272 (N.D.N.Y. 2009) ("Plaintiff has the burden of proof at step three to

show that her impairments meet or medically equal a Listing.") (citing Naegele v.

Barnhart, 433 F. Supp. 2d 319, 324 (W.D.N.Y. 2006)).

The ALJ's analysis of plaintiff's impairments at step three "indicate a sufficient

consideration of [plaintiff's] impairments in relation to the Listings." Andrea K., 2021 WL

1224049, at *8 ("Accordingly, the ALJ's thorough analysis of [the p]laintiff's impairments at Step Three indicate sufficient consideration of these impairments in relation to the Listings.  For the reasons set forth above, the ALJ's findings regarding [the p]laintiff's impairments at Step Three are supported by substantial evidence.").  Therefore, the ALJ's step-three determination is supported by substantial evidence.  See Sava v. Astrue, No. 06-CV-3386 (KMK/GAY), 2010 WL 3219311, at *4 (S.D.N.Y. Aug. 12, 2010) ("[T]here is sufficient uncontradicted evidence in the record to provide substantial evidence for the conclusion that [the p]laintiff failed to meet step three") (citing Otts v. Comm'r of Soc. Sec., 249 F. App'x 887, 889 (2d Cir. 2007) (summary order) (noting that "[w]hile the ALJ might have been more specific in detailing the reasons for concluding that [the plaintiff] did not satisfy a listing impairment, the referenced medical evidence, together with the lack of compelling contradictory evidence from the plaintiff" was sufficient to uphold the ALJ's finding)).

**4. RFC Determination**

As the Commissioner asserts, the ALJ's RFC determination is also properly supported.  See T. at 17-18; see also Dkt. No. 16 at 10-12.  The RFC is "the most [an individual] can still do despite [his or her] limitations."  20 C.F.R. § 404.1545(a)(1).  "RFC describes what a claimant is capable of doing despite his or her impairments, considering all relevant evidence, which consists of physical limitations, symptoms, and other limitations beyond the symptoms."  Malcolm M. v. Comm'r of Soc. Sec., No. 1:17-CV-0986 (CFH), 2019 WL 187725, at *4 (N.D.N.Y. Jan. 14, 2019) (citing Martone, 70 F. Supp. 2d at 150, and 20 C.F.R. §§ 404.1545, 416.945).  "[A]n RFC finding is administrative in nature, not medical, and its determination is within the province of the

ALJ." Curry v. Comm'r of Soc. Sec., 855 F. App'x 46, 48 n.3 (2d Cir. 2021) (summary order) (citing 20 C.F.R. § 404.1527(d)(2)). "In assessing RFC, the ALJ's findings must specify the functions plaintiff is capable of performing; conclusory statements regarding plaintiff's capabilities are not sufficient." Martone, 70 F. Supp. 2d at 150 (citations omitted).

In making the RFC determination, the ALJ must consider all relevant medical and other evidence, including any statements about what the claimant can still do provided by any medical sources. See 20 C.F.R. §§ 404.1545(a)(3), 404.1546(c). "[T]he ALJ's conclusion [need] not perfectly correspond with any of the opinions of medical sources cited in his [or her] decision, [and] he [or she i]s entitled to weigh all of the evidence available to make an RFC finding that [i]s consistent with the record as a whole." Matta v. Astrue, 508 F. App'x 53, 56 (2d Cir. 2013) (summary order). The Court "defer[s] to the Commissioner's resolution of conflicting evidence[.]" Smith v. Berryhill, 740 F. App'x 721, 726 (2d Cir. 2018) (summary order) (citation and quotation marks omitted). "Therefore, even if a plaintiff disagrees with the ALJ's assessment of opinion evidence and can point to evidence in the record to support his or her position, whether there is substantial evidence supporting the [plaintiff's] view is not the question"; "rather, [the Court] must decide whether substantial evidence supports the ALJ's decision." Elizabeth P. v. Comm'r of Soc. Sec., No. 3:20-CV-891 (CFH), 2022 WL 507367, at *4 (N.D.N.Y. Feb. 18, 2022) (internal quotation marks and citation omitted)). The ALJ must not "ignore evidence or cherry pick only the evidence from medical sources that support a particular conclusion and ignore the contrary evidence," but "[t]he Court will not reweigh the evidence that was before the ALJ." April B. v. Saul, No. 8:18-CV-682

(DJS), 2019 WL 4736243, at *6 (N.D.N.Y. Sept. 27, 2019) (internal quotation marks and citations omitted).

Here, the ALJ determined that plaintiff retained the RFC to perform light work with occasional postural, manipulative, and environmental limitations.  See T. at 17-18.  First, in reaching such a determination, the ALJ properly evaluated various medical opinions including from consultative examiners Kalyani Ganesh, M.D., and Rita Figueroa, M.D.  See id. at 18-19.  On November 16, 2015, plaintiff underwent a consultative physical examination with Dr. Ganesh.  See id. at 1016-19.  Following the examination, Dr. Ganesh issued a report summarizing plaintiff's chief complaint, past history, current medications, social history, activities of daily living, as well as Dr. Ganesh's findings from the physical examination.  See id.  Dr. Ganesh observed that plaintiff's gait and stance were normal, she demonstrated full muscle strength throughout her arms and legs, her hand and finger dexterity were intact, and her hands exhibited full grip strength.  See id.  Dr. Ganesh diagnosed plaintiff with a history of right shoulder surgery, history of right scapula resection, history of thoracic outlet surgery, status post gallbladder surgery, status post biliary stent placement, history of osteopenia, and history of alpha 1 antitrypsin deficiency.  See id. at 1019.  Dr. Ganesh opined that plaintiff had "no gross limitation to sitting, standing, or walking," and "moderate limitation to lifting, carrying, pushing, and pulling."  Id.

On September 21, 2021, plaintiff underwent a consultative physical examination with Dr. Figueroa.  See T. at 1040-43.  Following the examination, Dr. Figueroa issued a report summarizing plaintiff's chief complaint, past history, current medications, social history, activities of daily living, as well as Dr. Figueroa's findings from the physical

examination.  See id.  Dr. Figueroa observed that plaintiff's gait and stance were

normal, she demonstrated full muscle strength throughout her arms and legs, her hand

and finger dexterity were intact, and her hands demonstrated full grip strength.  See id.

at 1141-42.  Dr. Figueroa diagnosed plaintiff with chronic neck pain, cervicalgia,

lumbago, alpha 1 antitrypsin deficiency, and hypertension.  See id. at 1143.  Dr.

Figueroa opined that plaintiff "has severe limitations for reaching, pushing, pulling,

lifting, and carrying"; "moderate limitations for sitting, standing and walking"; and "[s]he

should avoid pulmonary irritants."  Id.

The ALJ noted that he had "given some weight to Dr. Ganesh's opinion, because

she had the opportunity to examine [plaintiff], and her opinion is supported by the

diagnostic images in record."  T. at 18 (citations omitted).  The ALJ considered some of

Dr. Ganesh's observations when crafting the RFC, including that plaintiff

> was in no acute distress, gait was normal, stance was normal,
> no assistive devices were used, no assistance was require
> during the evaluation, range of motion was full in the cervical
> spine, range of motion was reduced in the lumbar spine, the
> straight leg raise was negative bilaterally, range of motion was
> full in the left shoulder, range of motion was reduced in the
> right shoulder, range of motion was full in the elbows,
> forearms, wrists and lower extremities bilaterally, joints were
> stable and nontender, no redness, heat, swelling, or effusion
> was present, deep tendon reflexes were physiologic and
> equal in the extremities, no sensory deficits were present,
> strength was full in the extremities, pulses were physiologic
> and equal, no muscle atrophy was present, hand and finger
> dexterity was intact, and grip strength was full bilaterally.

Id. at 21 (citing T. at 1017-19).  However, the ALJ also noted that,

> accounting for the pulmonary function test [T. at 1095], as well
> as [plaintiff's] treatment for her respiratory condition, . . .
> greater environmental restrictions than Dr. Ganesh outlined
> [were warranted].  In addition, . . . [plaintiff's] treatment history
> for her right shoulder disorder, [T. at 903, 1019, 1150], [has

> been accounted for] by including manipulative restrictions within the established residual functional capacity. Furthermore, . . . [plaintiff's] ongoing complaints of back and neck pain [have been accounted for] by including postural restrictions within the residual functional capacity. [T. at 1139].

Id. at 18-19.

The ALJ went on to discuss Dr. Figueroa's opinion and noted that "[a]lthough a more recent examination, [he has] given lesser weight to [her] assessment . . . because it is not substantiated by the objective evidence in record." T. at 19. The ALJ explained that

> Dr. Figueroa identified "severe" limitations for reaching, pushing, pulling, lifting, and carrying; yet an MRI scan of [plaintiff's] cervical spine from August 2021 was deemed negative without any cord compression present. [T. at 1144]. In January 2022, an MRI scan of her neck remained unremarkable. [T. at 1146-47]. While Dr. Figueroa noted some abnormal clinical findings associated with [plaintiff's] cervical spine and right shoulder disorder, she had full strength in the upper extremities, no sensory deficits, no muscle atrophy, intact hand and finger dexterity, and 5/5 grip strength bilaterally. [T. at 1142]. Additionally, Dr. Figueroa's opinion is unsupported by the significant gap in treatment for [plaintiff's] musculoskeletal symptoms, and [plaintiff's] activities of daily living, which included living alone. [T. at 1141].

Id. However, the ALJ credited some of Dr. Figueroa's observations, including that plaintiff

> remained in no acute distress, gait was normal, no assistive device was used, squat was reduced, stance was normal, no assistance was required during the evaluation, range of motion was restricted in the cervical spine, range of motion was full in the lumbar spine, range of motion was reduced in the shoulders and hips, range of motion was full in the forearms, wrists, and fingers, joints were stable and nontender, deep tendon reflexes were physiologic and equal in the upper extremities, no sensory deficits were present,

> strength was full in the extremities, no muscle atrophy was
> present, hand and finger dexterity was intact, and grip
> strength was full bilaterally.

Id. at 21 (citing T. at 1141-42).

The undersigned discerns no error in the ALJ's assessment of Dr. Ganesh's and

Dr. Figueroa's opinions.  See Byrne v. Berryhill, 284 F. Supp. 3d 250, 260 (E.D.N.Y.

2018) ("An ALJ is permitted to accord greater weight to a consultative examiner's

opinion if the conclusions are more consistent with the medical evidence.") (citation

omitted); see also Suttles v. Colvin, 654 F. App'x 44, 46 (2d Cir. 2016) (summary order)

(finding no error where the ALJ gave great weight to consultative examiner's opinion

because it was consistent with record evidence); Matta, 508 F. App'x at 56 (explaining

that, although the ALJ's conclusion did not perfectly correspond with any of the opinions

of medical sources, the ALJ was entitled to weigh all of the evidence available to make

an RFC finding that was consistent with the record as a whole); Michelle M. v. Comm'r

of Soc. Sec., No. 3:18-CV-1065 (TWD), 2020 WL 495170, at *7 (N.D.N.Y. Jan. 30,

2020) ("[T]he ALJ's analysis of the opinion evidence is supported by substantial

evidence in that he accurately discussed the opinions and provided sufficient reasons

for the weight given to each opinion.").

Second, the ALJ also properly considered the objective evidence of record to

conclude that plaintiff "could perform a range of light work with postural, environmental,

and minor manipulative restrictions."  T. at 20.  The ALJ explained,

> [f]or instance, in March 2013, [plaintiff] denied any
> musculoskeletal symptoms and neurological symptoms.  [T.
> at 915].  When evaluated, she was in no acute distress with
> full range of motion of the extremities, and normal neck
> examination.  [T. at 916].  In August 2013, [plaintiff] was in no
> acute distress, gait was normal, improved SC dyskinesis was

19

> noted, negative provocative sign of the glenohumeral joint, and full range of motion was present. [T. at 820]. In January 2014, [plaintiff] was in no acute distress, range of motion of the glenohumeral joint was actually good, stable to anterior, posterior, and inferior stresses, and mild scapulothoracic dyskinesis was present on the right tender along the upper trapezius and rhomboids. [T. at 819]. In July 2014, with the exception of taking medication for her asthma, [plaintiff] stated that she was not taking any medication for her other symptoms. [T. at 824]. In January 2015, orthopedic records noted that while [plaintiff] had significant scapulothoracic dyskinesis and positive impingement sign, she was in no acute distress, and gait was normal. [T. at 818]. In February 2015, [plaintiff] had normal sensation, normal coordination, and normal range of motion of the upper the extremities. [T. at 885]. In June 2015, [plaintiff] denied experiencing any neck pain. [T. at 853]. When evaluated in June 2015, sensation was intact, strength was full in all extremities, and no edema was present. [T. at 862]. Her thoracic outlet syndrome and right shoulder pain were considered stable. [T. at 864]. In September 2015, [plaintiff] had normal gait and station, normal reflexes, and normal sensation. [T. at 924]. During a subsequent evaluation, [plaintiff] had normal movement in all extremities. [T. at 954]. In November 2016, March 2018, June 2018, December 2018, and June 2019, [plaintiff] had normal sensation, normal coordination, and normal range of motion in the upper extremities without pain. [T. at 1088, 1093, 1098-99, 1102-03, 1117].

Id. at 20-21.

The ALJ acknowledged that plaintiff "has respiratory issues related to asthma and chronic obstructive pulmonary disease, and a pulmonary function test showed evidence of moderately severe obstructive airways disease." T. at 21 (citing T. at 1095). However,

> a medical provider noted that during the pulmonary function test, [plaintiff] was unable to produce good and reproducible efforts. [T. at 1095]. Other pulmonary function tests showed normal to moderate findings, but again, there were indications that she was putting forth suboptimal effort. [T. at 895-97]. [Plaintiff] was prescribed inhalers. [T. at 1016]. In February 2015, [plaintiff] reported to improvement in her sinus and

respiratory symptoms with augmentation therapy. [T. at 883].
In September 2021, [plaintiff] denied any hospitalizations or
emergency room visits for worsening respiratory difficulties.
[T. at 1140]. Physical examinations described [plaintiff's]
lungs as clear to auscultation. [T. at 776, 853, 869, 916, 1018,
1141]. Diagnostic images of her chest showed no evidence
of acute disease. [T. at 873, 878, 1089]. She denied
experiencing any side effects from Albuterol. [T. at 1086].

Id. Thus, the ALJ concluded that he "fully accounted for [plaintiff's] respiratory illness by including the environmental restrictions within the established residual functional capacity." Id.

The ALJ did not err in his assessment of the objective medical evidence. See Robert V. v. Kijakazi, No. 3:21-CV-00377 (MPS), 2022 WL 4536838, at *4-5 (D. Conn. Sept. 28, 2022) (finding that substantial evidence supported the ALJ's RFC determination where the ALJ considered the objective medical evidence); see also Michelle P. v. Saul, No. 1:19-CV-01046 (MJR), 2021 WL 791115, at *5 (W.D.N.Y. Mar. 2, 2021) ("This Court declines to disrupt the ALJ's assessment of the objective evidence and defers to the ALJ's right to resolve conflicts in the record.") (citation omitted).

Accordingly, "the ALJ's analysis of the medical and opinion evidence of record indicates a detailed review of such evidence with sufficient explanation to support the RFC determination." Terri G. v. Comm'r of Soc. Sec., No. 3:18-CV-0066 (CFH), 2019 WL 1318074, at *9 (N.D.N.Y. Mar. 22, 2019) (concluding that the ALJ's RFC was supported by substantial evidence); see Peter F. v. Comm'r of Soc. Sec., No. 5:20-CV-1003 (ML), 2022 WL 1504174, at *11 (N.D.N.Y. May 12, 2022) ("In light of the ALJ's analysis, this court concludes that her RFC determination was supported by substantial evidence, as summarized above. Therefore, this court will not disturb the ALJ's RFC determination.") (citations omitted). Thus, the ALJ's RFC determination is supported by

substantial evidence in the record.  See Sarah Ann Z. v. Comm'r of Soc. Sec., No. 1:19-CV-01110 (JJM), 2021 WL 1206516, at *4 (W.D.N.Y. Mar. 31, 2021) (upholding the ALJ's RFC because "'[u]ltimately it is [the p]laintiff's burden to prove a more restrictive RFC than the RFC assessed by the ALJ,'" yet the "[p]laintiff fail[ed] to articulate what, if any, additional limitations appear in [the evidence] that the ALJ failed to include in the RFC.  Nor does [the] plaintiff identify any other evidence in the record that satisfies her burden to prove more restrictive limitations than those already included in the RFC.") (quoting Beaman v. Comm'r of Soc. Sec., No. 1:18-CV-01344 (EAW), 2020 WL 473618, at *6 (W.D.N.Y. Jan. 28, 2020)).

### 5. Step Four

The ALJ properly concluded at step four that "[f]or purposes of Title II, [plaintiff] is capable of performing past relevant work as a manager, office; sales representative, hotel services; and composite position of order clerk and secretary," and "[f]or purposes of Title XVI, [plaintiff] is capable of performing past relevant work as sales representative, hotel services; and composite position of order clerk and secretary."  T. at 22.  In reaching such a conclusion, the ALJ noted that "[i]n compliance with the [Appeals Council's] Order, [he has] given greater consideration to [plaintiff's] past work activity."  Id.; see id. at 188-89 (instructing the ALJ to, upon remand, "[g]ive further consideration to whether [plaintiff] can perform her past relevant work" and to "obtain supplemental evidence from a vocational expert").

"[P]ast relevant work" is "work that [a claimant has] done within the past 15 years, that was substantial gainful activity, and that lasted long enough for [a claimant] to learn to do it."  20 C.F.R. § 416.960(b)(1).  "Notably, at the fourth step of the disability

analysis, 'the claimant has the burden to show an inability to return to [her] previous specific job and an inability to perform [her] past relevant work generally.'" Thomas C. W. v. Kijakazi, 666 F. Supp. 3d 202, 220 (N.D.N.Y. 2023) (quoting Jasinski v. Barnhart, 341 F.3d 182, 185 (2d Cir. 2003)).  "This inquiry requires separate evaluations of the previous specific job and the job as it is generally performed."  Glessing v. Comm'r of Soc. Sec. Admin., 725 F. App'x 48, 49 (2d Cir. 2018) (summary order) (citation omitted), as amended (Feb. 27, 2018).  "The ALJ may inquire into the way a job is generally performed using a vocational expert ('VE') and the Dictionary of Occupational Titles ('DOT')."  Id. (citation omitted).

Here, as the Commissioner argues, and as the ALJ found, plaintiff failed to carry her burden of showing that she could no longer perform her past relevant work.  See T. at 22; see also Dkt. No. 16 at 15; Reices-Colon v. Astrue, 523 F. App'x 798, 799 (2d Cir. 2013) (summary order) ("A disability claimant bears the burden of proving that she cannot return to her past relevant work, either as it is performed in the national economy, or as she actually performed it.") (citations omitted).  The ALJ initially noted that plaintiff's

> past work as a sales representative, hotel services, and composite position of order clerk and secretary were done within the last 15 years, performed at levels of substantial gainful activity, and lasted long enough for her to learn the requirements of the job. . . . [F]or purposes of Title II, the relevant 15-year period is 15 years preceding the date of the Title II disability insured status requirement.  In this case, [plaintiff's] date last insured is December 31, 2017 (Exhibit 26D).  [Plaintiff's] position as manager of dental office was performed from October 2002 through September 2005, which would meet the 15-year time period for her Title II application, but it is too remote in time for her Title XVI application.

T. at 23.  As for plaintiff's past work as an officer manager, she

> reported that she was employed as a manager at a dental office from October 2002 through September 2005 [T. at 575], which is within the past 15 years of the date last insured. Earnings record available to the Administration showed posted wages through Fulton Falls Dental Management in the amount of $37,040 in 2003, $60,790 in 2004, and $24,000 in 2005, which is indicative of substantial gainful activity for these years (20 CFR 404.1572, 404.1574, 416.972 and 416.974).  [T. at 440].  The vocational expert characterized this position as manager, office (D.O.T. # 169.167-034, sedentary exertion) and having a specific vocational profile (SVP) of 7, which means it takes an individual a minimum of at least two years to learn this position.

Id. at 22.  The ALJ concluded that, "[b]ased on her reported history, [plaintiff] was employed as a manager at a dental office long enough for her to learn the duties of the position."  Id.

> As for plaintiff's work as an order clerk and secretary, she

> stated that she was employed as an inside sales administrator for an electrical insulator distribution from May 2010 through March 2012, which is within the last 15 years.  [T. at 575]. Earnings record available to the Administration showed posted wages through EIS Legacy in the amount of $18,521 in 2010, $31,027 in 2011, and $6,126 in 2012, which is indicative of substantial gainful activity for these years (20 CFR 404.1572, 404.1574, 416.972 and 416.974).  [T. at 441]. At the hearing, [plaintiff] clarified the nature of this position, indicating that her duties included administrative work and sales.  She testified that she was responsible for administrative office work for the branch manager, used a computer, created spreadsheets, used the telephone, and interacted with sales staff.  With regards to the sales component, [plaintiff] indicated that she monitored accounts, took in requests for orders, suggested new products, dealt with inventory, and handled branch-to-branch communication.  [Plaintiff] confirmed that the job was performed seated at a desk (Testimony).  The vocational [expert] characterize[d] [plaintiff's] work as an inside sales administrator as a composite job because it has significant elements of more than one DOT occupation.  The vocational

expert described this position as order clerk (D.O.T. # 249.362-026, sedentary exertion, SVP 4) and secretary (D.O.T. # 201.362-030, sedentary exertion, SVP 6), which means it takes an individual a minimum of at least one year to learn this position.

T. at 23. The ALJ concluded that, "[b]ased on her reported history, [plaintiff] was employed as an order clerk and secretary long enough for her to learn the duties of the positions." Id.

As for plaintiff's past work as a sales representative, hotel services, she

reported that she was employed as a sales representative for hotel banquets from March 2006 through January 2008, which is within the past 15 years. [T. at 575]. Earnings record available to the Administration showed posted wages through Staff Leasing in the amount of $16,730 in 2006, $32,019 in 2007, and $3,171 in 2008, which is indicative of substantial gainful activity for these years (20 CFR 404.1572, 404.1574, 416.972 and 416.974). [T. at 440-41]. The vocational expert characterized this position as sales representative – hotel services (D.O.T. #259.157-014) and having an SVP of 7, which means it takes an individual a minimum of at least two years to learn this position. Based on [plaintiff's] combined education and work experience, . . . [plaintiff] has perform[ed] the position of sales representative for hotels long enough to learn the duties of the position (POMS DI 25001.001).

T. at 23. The ALJ went on to explain that,

[u]nder the Regulations, we use the SVP rating as a guideline for determining how long it would take a claimant to achieve average performance in a job as part of our evaluation of whether [plaintiff's] past work is relevant. At the skilled levels of SVP (5-9), education figures heavily into the SVP rating. In the instant case, [plaintiff] is a few months shy of working as a sales representative at hotels for the minimum amount of two years; however, she completed three years of schooling between Onondaga Community College and Bryant and Stratton College, and she earned an Associate's degree in business, which is relevant to the nature of her position. [T. at 1131].

Id.  The ALJ concluded that plaintiff's "additional educational experience supplements her actual work experience, and that she satisfies the durational requirement at this position."  Id.

The ALJ noted that "[t]he vocational expert testified that an individual with the same residual functional as [plaintiff] would be able to perform her past relevant work as manager, office; sales representative, hotel services; and composite position of order clerk and secretary."  T. at 23; see Duncan v. Berryhill, No. 1:18-CV-00063 (HBF), 2019 WL 1994274, at *8-9 (W.D.N.Y. May 6, 2019) (concluding that "substantial evidence supported the ALJ's Step Four determination that [the] plaintiff could perform her past relevant work as a Dietary Manager," where "the VE testified that, given the RFC found by the ALJ, [the] plaintiff could perform the functions of the Dietary Manager/Director job, as generally performed in the national economy").  The ALJ accepted the VE's opinion, noting that the opinion "is generally consistent with the information contained in the Dictionary of Occupational Titles."  T. at 23.  The ALJ concluded that, in comparing plaintiff's RFC "with the physical and mental demands of this work, for purposes of Title II and Title XVI, . . . [plaintiff] is able to perform sales representative, hotel services as actually and generally performed, and the composite position of order clerk and secretary as actually performed."  Id. at 24.  The ALJ further determined that "[f]or purposes of Title II only, . . . [plaintiff] could also perform manager, office as actually and generally performed."  Id.

Given the ALJ's thorough analysis, his step-four findings are supported by substantial evidence and are consistent with the Appeals Council Order.  See, e.g., Stanton v. Colvin, No. 3:14-CV-1144 (GLS/ATB), 2015 WL 5841473, at *12 (N.D.N.Y.

Oct. 7, 2015) ("The ALJ's determination that [the] plaintiff could still perform the duties associated with the switchboard operator position was consistent with his RFC determination and was made after an analysis of the associated job responsibilities and [the] plaintiff's reasons for leaving the position in 2012.  Accordingly, this court concludes that there is substantial evidence in the record to support the ALJ's determination that [the] plaintiff retained the RFC to perform her past relevant work."); Newton v. Comm'r of Soc. Sec., No. 5:14-CV-904 (TJM/ATB), 2015 WL 5117768, at *12 (N.D.N.Y. Aug. 31, 2015) ("Drawing on the medical evidence, . . . and the VE's input, the ALJ's determination that [the] plaintiff's RFC would allow him to perform his past relevant work as a garbage collector . . . , and to perform his past relevant work as a cleaner . . . was supported by substantial evidence.").

Accordingly, the ALJ's ultimate conclusion that plaintiff "has not been under a disability, as defined in the Social Security Act, from March 6, 2012, through the date of this decision," is supported by substantial evidence.  T. at 24; see Colgan v. Kijakazi, 22 F.4th 353, 359 (2d Cir. 2022) ("[T]he evidentiary threshold for the substantial evidence standard 'is not high[.]'") (quoting Biestek v. Berryhill, 587 U.S. 97, 103 (2019)); see also Ayala v. Kijakazi, 620 F. Supp. 3d 6, 14 (S.D.N.Y. 2022) (explaining the substantial evidence standard and noting that "[t]he Court must afford the Commissioner's determination considerable deference and may not substitute its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review.") (internal quotation marks and citations omitted).  It is, therefore, recommended that the Commissioner's decision be affirmed.

27

## V. Conclusion

**WHEREFORE**, for the reasons stated herein, it is hereby:

**RECOMMENDED**, that plaintiff's request (Dkt. Nos. 13 and 20) be **DENIED**; and it is further

**RECOMMENDED**, that the Commissioner's motion (Dkt. No. 16) be **GRANTED**; and it is

**RECOMMENDED**, that the Commissioner's decision be **AFFIRMED**; and it is

**ORDERED**, that the Clerk serve a copy of this Report-Recommendation and Order on all parties in accordance with Local Rules.

**IT IS SO ORDERED**.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW**. See Roldan v. Racette, 984 F.2d 85, 89 (2d Cir. 1993) (citing Small v. Secretary of Health and Human Servs., 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 6(a), 6(e), 72.

Date:    August 19, 2024
Albany, New York

*Christian F. Hemmel*

Christian F. Hummel
U.S. Magistrate Judge